Kevin L. HILL, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1682.

District of Columbia Court of Appeals.

Submitted April 19, 1988.
Decided May 31, 1988.

Gregory C. Powell, appointed by this court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Mary Ellen Abrecht, John P. Dominguez, and Dennis R. Carluzzo, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before MACK, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of distributing phenmetrazine, in violation of D.C.Code § 33–541(a)(1) (1987 Supp.). He contends on appeal that the identification of him by a single eyewitness—an undercover police officer—was insufficient to permit his case to go to the jury. He also argues that the trial court committed plain error by permitting a non-expert witness to testify about the practices of police officers and narcotics traffickers. We reject both contentions and affirm appellant's conviction.

I

Viewed in the light most favorable to the government,[1] the evidence showed that appellant Hill and a co-defendant, Gilbert Iverson, sold two phenmetrazine tablets for $30 to an undercover police officer, Alton Haynes.[2] The sale took place at 12:50 a.m. in a well-lit area at the corner of 12th and O Streets, N.W., while the officer and Hill stood about two feet apart. Except for Iverson, there was no one else on the street corner at that time.

After the sale, Officer Haynes walked back to his car, which was about a block away, and radioed a description of the two sellers to a waiting arrest team. The team went immediately to 12th and O Streets but could not find anyone who matched the descriptions Haynes had given. Twenty minutes later, however, the officers returned to 12th and O Streets and spotted Hill. They radioed Officer Haynes and asked him whether one of the sellers had been wearing glasses.[3] When Haynes answered yes, Officer Anthony Cesaro detained Hill (who was wearing glasses) and notified Haynes that he had a suspect. Haynes then drove past the corner and positively identified Hill over the radio as the man who had given him the pills in exchange for $30. As soon as he heard this, Cesaro placed Hill under arrest and searched him, but found no drugs or pre-recorded police funds.

At trial Officer Cesaro tried to explain why the arrest team could not immediately locate the men who had sold the pills to Officer Haynes. Cesaro, though not qualified as an expert in drug trafficking, testified that drug suspects often leave the scene of a drug transaction after a sale in order to evade arrest. Essentially the same testimony was later given by an expert witness, Detective Lawrence Coates. In addition, after the issue was brought up during cross-examination, Cesaro testified about the police practice of seizing large sums of money from drug suspects upon arrest.

Appellant Hill was the only defense witness. He admitted being in the vicinity of 12th and O Streets on the night in question, but he asserted that the police misidentified him. He claimed that he was on his way to his girl friend's house when the

---

1. *E.g., Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978); *Crawford v. United States,* 126 U.S. App.D.C. 156, 158, 375 F.2d 332, 334 (1967).

2. Iverson was also convicted but did not appeal.

3. In his initial broadcast Officer Haynes did not mention that one of the suspects was wearing glasses. At trial he stated that he failed to mention Hill's glasses because he was trying to keep his description short so that the broadcast

channel would be free for other officers to use. In addition, he said, there is no need to broadcast a detailed description of a suspect over the radio when the undercover officer is available to make a "ride-by" identification and confirm that the right person has been apprehended. Haynes testified that during the ride-by he had no difficulty seeing Hill, who was about fifteen feet away and the only person—other than the arresting officers—on the corner.

police stopped him and placed him under arrest.

## II

On appeal Hill maintains that the identification evidence presented by the government was grossly inadequate and unreliable and that the trial court should have granted his motion for judgment of acquittal. To support this claim of error, Hill relies on the fact that the identification was made by only one witness from a moving automobile when he was already in custody. We find no error.

The United States Court of Appeals in this jurisdiction has repeatedly held that a narcotics conviction may lawfully rest upon the uncorroborated identification testimony of an undercover police officer. *E.g., United States v. Butler*, 205 U.S.App.D.C. 19, 21–22, 636 F.2d 727, 729–730 (1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3010, 69 L.Ed.2d 392 (1981); *United States v. Mills*, 149 U.S.App.D.C. 345, 350, 463 F.2d 291, 296 (1972). Although this court has never expressly so held until today in a drug case, at least not in a published opinion,[4] we have often and consistently affirmed other criminal convictions—or their equivalent in juvenile cases—based on the identification testimony of a single eyewitness. *E.g., In re B.E.W.*, 537 A.2d 206, 207–208 (D.C.1988) (unauthorized use of a vehicle); *Malloy v. United States*, 483 A.2d 678, 680 (D.C.1984) (burglary); *Berryman v. United States*, 378 A.2d 1317, 1321 (D.C.1977) (assault with intent to rape); *accord, Jones v. United States*, 124 U.S.App.D.C. 83, 85, 361 F.2d 537, 539 (1966) (robbery). We see no reason to impose stricter requirements of proof in drug cases than in any other types of cases.

■ A conviction based upon a single eyewitness identification will not be disturbed if a reasonable juror could find the circumstances surrounding the identification convincing beyond a reasonable doubt. *Smith v. United States*, 389 A.2d 1356, 1358 n. 5 (D.C.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978); *Crawley v. United States*, 320 A.2d 309, 311, *rehearing en banc denied*, 325 A.2d 608 (D.C.1974).[5] Even if discrepancies exist between the witness' description of the defendant and his actual appearance, as occurred in the *Butler* case,[6] the conviction must still be affirmed if there are other factors showing that the identification is reliable. Such discrepancies affect only the weight of the evidence, not its sufficiency or admissibility, and are properly left for the jury to evaluate in the exercise of its sound discretion.

■ Applying these principles to the instant case, we conclude that Hill's conviction must be affirmed. The single eyewitness, an undercover police officer, had ample opportunity to observe the two men who sold him drugs; he testified, in particular, that he stood within "a couple of feet" from Hill when the transaction took place on a "well lit" street corner. The twenty-five minute interval between the sale and Officer Haynes' ride-by identification does little or nothing to diminish the reliability of his testimony. We simply cannot say that the passage of twenty-five minutes would so weaken his identification as to render it legally insufficient to sustain a conviction. Nor is the reliability of his testimony fatally damaged by his failure to mention in his initial broadcast description that one of the suspects was wearing glasses, especially when he gave an explanation (see note 3, *supra*) which a reasonable trier of fact could accept.

■ We therefore reject Hill's claim of evidentiary insufficiency. We hold, first,

---

**4.** In unpublished memorandum opinions, however, we have repeatedly affirmed narcotics convictions based on the identification testimony of a single undercover officer, frequently citing *inter alia* the *Butler* and *Mills* cases.

**5.** In evaluating an identification made by a single eyewitness, courts look to such factors as the ability of the witness to make an effective iden-

tification, the witness' opportunity to observe, the length of time between observation and identification, and the certainty of the identification as expressed by the witness. *Crawley v. United States, supra*, 320 A.2d at 311–312.

**6.** *See United States v. Butler, supra*, 205 U.S.App. D.C. at 21, 636 F.2d at 729.

that the identification testimony of a single eyewitness is sufficient to sustain a conviction of distributing a controlled substance (coupled, of course, with other evidence identifying the substance itself), and second, that nothing in the circumstances of this case rendered Officer Haynes' identification of Hill so unreliable that the case should not have gone to the jury.

### III

Hill also contends that the trial court committed plain error by permitting a non-expert witness, Officer Cesaro, to testify about the practices of narcotics traffickers and police officers. We are by no means persuaded that all of the testimony of which Hill now complains was opinion testimony and therefore inadmissible unless it came from an expert. But, even assuming that it was and that the trial court erred in allowing the jury to hear it, we are satisfied that the error was harmless.

Hill challenges Officer Cesaro's testimony about (1) the police practice of seizing money from suspected drug dealers after their arrest and (2) a drug dealer's reasons for leaving an area after effecting a sale. First of all, we emphasize that defense counsel never objected at trial to this testimony, so that Hill must now demonstrate plain error before he can win reversal on this ground, *i.e.*, error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (citations omitted). Hill's arguments fall far short of establishing plain error.

■ With respect to item (1), Officer Cesaro was competent to testify about the general practice of the police department of which he himself was a member. So long as his testimony was based on his personal knowledge, it would not even be "expert" testimony. This particular bit of evidence was elicited by the prosecutor on redirect examination, after defense counsel opened the door on cross-examination by asking whether Cesaro found any money on Hill at the time of his arrest. We are satisfied that the prosecutor's questions were appropriate for redirect examination, and that Cesaro's answers to those questions did not constitute opinion testimony at all.

■ Item (2) presents a closer question, but not a troubling one. The government argues, with some persuasiveness, that Cesaro's testimony about the reasons why a drug dealer would leave the scene of a transaction immediately after its completion was "proper lay opinion," citing such cases as *Fateh v. Rich*, 481 A.2d 464, 470 (D.C.1984). We need not decide this point because virtually the same testimony was given later by Detective Coates, whose credentials as an expert have never been questioned in this case. Thus Cesaro's testimony was cumulative of that of Coates, and Hill suffered no conceivable prejudice. Finally, Hill's general claim that the trial was fundamentally unfair because Officer Cesaro's credibility was enhanced by his offering of expert opinion provides no basis for a new trial. Such enhancement, if it occurred at all, certainly did not rise to the level of plain error.

In short, we are hard pressed to find any irregularity in Officer Cesaro's testimony. But even if error somehow crept into the trial, it was surely harmless. *See Beach v. United States*, 466 A.2d 862, 865 (D.C. 1983). *A fortiori* Hill has not convinced us that there was plain error requiring us to set aside his conviction on the ground that Cesaro's testimony was improperly admitted.

*Affirmed.*