**Arthur L. GRANT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–1716.**

District of Columbia Court of Appeals.

Argued Oct. 29, 1985.

Decided May 30, 1986.

Kenneth H. Bernstein, Washington, D.C., for appellant.

Gerald W. Heller, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant appeals his mandatory minimum sentence under D.C.Code § 33–541(c)(1)(B) (Supp.1985) on the ground the trial court's refusal to hear evidence he was eligible for sentencing under the addict exception, *id.* § 33–541(c)(2), constituted a denial of due process of law. He relies on *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Because the record does not support the trial judge's determination that appellant had failed to meet his burden to show he was eligible for sentencing under the addict exception, we remand the case to the trial court for re-sentencing and do not reach the constitutional claim.

I

Appellant pleaded guilty to distribution of preludin in violation of the District of Columbia Uniform Controlled Substances Act, D.C. Code § 33–541(a)(1) (Supp.1985).[1] At that time, defense counsel advised the trial judge that appellant, recognizing he would have a burden of proof to meet, would seek sentencing under the addict exception. The government proffered that the evidence would show he had sold two pills, which he had obtained from his code-fendant and were subsequently identified as preludin, to an undercover police officer.

Prior to sentencing, defense counsel wrote the trial judge a letter which proposed that appellant be placed on probation for three years on condition he successfully complete an in-patient drug treatment program. Counsel advised that appellant had been admitted into a long term in-patient drug treatment program, R.A.P., Inc., and "hope[d] to justify a sentence allowing for continuation of this in-patient treatment as rational, just, and in the best interests of this community as well as Mr. Grant." Further, counsel stated appellant "fully realizes his need for this treatment," and that in committing the offense, appellant had "acted only as a runner for the co-defend-ant and acted solely to support his own habit." Counsel's letter reviewed appellant's employment history, home environment, and prior misdemeanor record.

The presentence report submitted to the trial judge stated that appellant had previously been convicted on three occasions of possession of marijuana, had been placed on supervised probation on each of these occasions, and had completed each of the

---

1. He does not challenge this conviction on appeal.

terms of probation with "poor adjustment." The report further quoted appellant as denying "serious drug addiction" and characterized his lifestyle as "without any meaningful involvement" and his attitude as one of "rebellion and disobedience." The report, therefore, recommended incarceration.

At sentencing, defense counsel repeated the request that appellant be allowed to enter the R.A.P. program. Counsel told the judge that after "a great deal of effort" by counsel and appellant, appellant had been admitted to the R.A.P. program on a full-time in-patient basis, and was "ready, able and willing" to take advantage of the opportunity to do something about his drug problem, which has been the source of his criminal involvement in the past. Counsel advised that Mr. Prentiss from the R.A.P. program was present to testify in support of appellant's request. In addition, counsel maintained that the presentence report contained irrelevant and prejudicial matters as well as misinformation, and no analytical reasoning. Counsel noted, for example, the report's misleading reference to appellant's "serious criminal record" when his adult record consisted only of misdemeanor marijuana possession charges.[2]

The prosecutor's response was that nothing said by counsel negated application of the mandatory minimum sentencing provision because counsel had not alleged appellant was an addict. Defense counsel argued he had made that allegation, and noted that the presentence report stated appellant had a drug problem, and also indicated that the defense was prepared through appellant, his common law wife and other witnesses who were present, to present such information. In rejoinder, the prosecutor commented that the presentence report stated appellant had denied "serious drug addiction."

The trial judge ruled that appellant had failed to meet his burden to prove he "is an addict and he needed to sell narcotics to support his addiction." The judge observed "[t]he citizens of this city have said we have to remove the scourge of narcotics from this city. Sellers of narcotics are the source of the scourge," and, further that, "when they enact the mandatory statute [they do not] want Judges of this Court to keep throwing good money after bad. What they want, although they may be somewhat interested in your client's welfare, what they really want is to get the sellers off the street." The judge concluded, based on reading everything submitted by defense counsel and the presentence report, that appellant had not "even come close to convincing me that other than the mandatory minimum sentence is what has to be applied here." In the judge's view, appellant had two jobs at the time of his offense and was simply "out making some money on the side [when he committed the instant offense]." When defense counsel requested permission for appellant to testify, the judge said it was unnecessary because "I wouldn't believe him. His record is against him. He has three terms of unsuccessful probation." When counsel tried to respond regarding appellant's prior behavior on probation, the judge cut him off and declined to hear further argument. Appellant was sentenced to the mandatory minimum term of imprisonment of not less than 20 months and not more than five years. D.C.Code § 33–541(c)(1)(B).

## II

The District of Columbia Uniform Controlled Substances Act (Controlled Sub-

---

2. Counsel objected to the report's vague reliance on some unidentified matters in appellant's juvenile records. Counsel also maintained that the statement in the presentence report that appellant's brother had been convicted of two murder charges was irrelevant and prejudicial. And counsel took issue with the report's conclusion that appellant's employment as a carpet installer had little market value, contending that appellant had a "relatively significant employment history," including jobs in Georgetown University's maintenance department and High's Food Store. Further, counsel claimed that, contrary to the report's view of appellant's home environment, appellant had not been a special problem in the community, domestically or otherwise.

stances Act or Act) prohibits the manufacture, distribution, or possession with intent to distribute or manufacture a controlled substance, D.C.Code § 33–541(a)(1). Upon conviction a person is to be imprisoned for a specified mandatory-minimum term. *Id.* § 33–541(c)(1). An exception to such sentencing is authorized for certain addicts. The addict exception of the Controlled Substances Act provides:

> [T]he court may, in its discretion, waive the mandatory-minimum sentencing provisions of subparagraphs (A) and (B) of paragraph (a) of this subsection when sentencing a person who has not previously been convicted in any jurisdiction in the United States for knowingly or intentionally manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance included in Schedule I, II or III if the court determines that the person was an addict at the time of violation of subsection (a)(1) or (b)(1) of this section, and that such person knowingly or intentionally manufactured, distributed, or possessed with intent to manufacture or distribute a controlled substance included in Schedule I, II, or III for the primary purpose of enabling the offender to obtain a narcotic drug which he required for his personal use because of his addiction to such drug.

D.C.Code § 33–541(c)(2).

The Act defines "addict" as "any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety or welfare, or who is so far addicted to the use of such narcotic drug as to have lost the power of self-control with reference to his addiction." D.C.Code § 33–501(24). Thus, prior to waiving the mandatory-minimum sentence, the judge must determine whether the defendant is an addict or has any prior disqualifying convictions, and whether commission of the offense of manufacture or distribution of narcotics was for the primary purpose of supporting the defendant's drug addiction. The Act does not prescribe standards for making these findings. Nor is there a legislative history to explain what was contemplated by the addict exception.[3]

The Federal Narcotic Addiction Rehabilitation Act (NARA), 18 U.S.C. §§ 4251 *et seq.* (1982) *repealed* effective Nov. 1, 1986, by Pub.L. 98–473, Oct. 12, 1984, 98 Stat. 2027, 2031, provides some guidance in interpreting the addict exception of the D.C. Controlled Substances Act. Like the Controlled Substances Act, it offers a defendant the possibility of receiving a sentence other than that which would ordinarily be imposed upon conviction of certain crimes if the defendant is an addict and the primary purpose for his offense was to support his addiction. Both statutes use the same definition of the term "addict,"[4] and authorize the trial judge to deny, as an exercise of his discretion, the benefits of alternative sentencing to an otherwise eligible defendant.

NARA provides, in relevant part,

> if the court determines that an eligible offender is an addict and is likely to be rehabilitated through treatment, it shall

---

**3.** The mandatory-minimum sentencing provisions were enacted by citizen initiative, D.C. Code § 1–285 (1981), as an amendment to the Controlled Substances Act. D.C. Law 4–166 (March 11, 1983). Section 2 of the District of Columbia Mandatory-Minimum Sentences Initiative of 1981 provides:

> The purpose of this initiative is to propose to the registered qualified electors of the District of Columbia the question of imposing mandatory-minimum sentences for those who are convicted of committing a crime of violence, as defined in Title 22, Section 3201, when armed with a firearm; or for knowingly or

intentionally manufacturing, distributing or possessing with intent to manufacture or distribute a controlled substance.

30 *D.C.Reg.* 1082, 1083 (March 11, 1983).

**4.** NARA defines an addict as:

> "Addict" means any individual who habitually uses any narcotic drug ... so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction.

18 U.S.C. § 4251(a) (1982).

commit him to the custody of the Attorney General for treatment under this chapter.... Such commitment shall be for an indeterminate period of time not to exceed ten years, but in no event shall it exceed the maximum sentence that could otherwise have been imposed.

\* \* \* \* \* \*

If, following an examination, ... the court determines that an eligible offender is not an addict, or is an addict not likely to be rehabilitated through treatment, it shall impose such other sentence as may be authorized or required by law.

18 U.S.C. § 4253 (1982).

"Eligible offender" is defined by NARA to include

any individual who is convicted of an offense against the United States [except]:

... an offender who is convicted of unlawfully importing or selling or conspiring to import or sell a narcotic drug, unless sale was for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug.

18 U.S.C. § 4251(f)(2)(1982).

Thus, under NARA, the judge must determine whether a defendant is an eligible offender, and if so, whether, as a matter of discretion, to place the defendant in the custody of the U.S. Attorney General for an examination to determine whether he is an addict and likely to be rehabilitated through treatment. 18 U.S.C. § 4253(a).

If, after reviewing the report on the examination, the judge concludes treatment will not be beneficial to the defendant, the judge is not required to impose the alternative sentence under NARA, *United States v. Williams,* 157 U.S.App.D.C. 355, 356–7, 484 F.2d 835, 837 (1973) but may impose such other sentence for the offense authorized by law. 18 U.S.C. § 4253(b); *United States v. Pinkney,* 177 U.S.App.D.C. 423, 427, 543 F.2d 908, 912 (1976).

■ Federal courts interpreting NARA have drawn some conclusions about the nature of the defendant's burden to establish eligibility for NARA sentencing. First, a convicted defendant must claim that he is eligible to receive treatment and rehabilitation instead of a sentence for his offense.[5] Second, the defendant must establish that his primary purpose in selling drugs was to support his addiction. To satisfy this requirement, he must show that "a substantial motivation for engaging in traffic in drugs would be his own habit."[6] It is not enough for a defendant to allege he committed the offense primarily to enable him to secure drugs to satisfy an addiction, if the evidence of his or her conviction, when coupled with other presentence information, clearly contradicts such a finding.[7] Third, the defendant must demonstrate that he is, in fact, addicted to a narcotic drug. This requirement is satisfied if the defendant shows he "habitually uses any narcotic drug ... so as to endanger the public morals, health, safety, or welfare ..." even if he is not able to show physical addiction.[8] For example, "habit-

5. *United States v. Johnson,* 373 F.Supp. 1057, 1059 (D.Del.1974) (defendant's failure to inform the court or its officers of his potential eligibility under NARA justified court's failure to consider sentencing him under NARA; the burden was on the defendant to establish his eligibility); 18 U.S.C. § 4251(f). *Accord United States v. Stalnaker,* 544 F.2d 725, 727 (4th Cir.1976) ("a showing sufficient to induce belief in the district court that an offender is an 'addict' is basic"); *United States v. Ross,* 464 F.2d 376, 381 (2d Cir.1972); *United States v. Porter,* 277 F.Supp. 655 (D.Minn.1967).

6. *United States v. Stalnaker, supra,* 544 F.2d at 729.

7. *E.g., United States v. Pinkney, supra,* 177 U.S. App.D.C. at 247, 543 F.2d at 912 (evidence adduced at trial showed defendant was selling a large quantity of heroin at a discount and of a purity above that being sold on the street, and thus, "strongly indicated that he was engaged in wholesaling narcotics.").

8. *Wheeler v. United States,* 276 A.2d 722, 724–25 (D.C.1971) (decided under the District of Columbia Dangerous Drug Control Act, on which Con-

ual use" was shown where a defendant ordinarily took three or four shots of heroin a day, but had not stolen money to obtain narcotics and had not suffered any serious withdrawal symptoms, such as fever or chills when he was committed to a hospital after his arrest.[9] Finally, the courts have required the issue of addiction to be explored in the context of sentencing, and consequently, the defendant's previous denials of addiction are not binding on him at sentencing.[10]

■ In the absence of any legislative directive, we conclude that NARA standards for determining eligibility are appropriately applied to the addict exception of the D.C. Controlled Substances Act. The eligibility requirements of the statutes are the same, the standards are reasonable, and these standards would impose no more of a burden on the parties and the trial court than is necessary to assure that the judge's discretion is appropriately exercised. *See generally Johnson v. United States*, 398 A.2d 354, 364 (D.C.1973) (the record at sentencing need only be sufficient to permit appellate review of the exercise of the trial judge's discretion). *Cf. Dorszynski v. United States*, 418 U.S. 424, 443–44, 94 S.Ct. 3042, 3053, 41 L.Ed.2d 855 (1974) (finding of 'no benefit' under the Federal Youth Corrections Act must be based on record but no express statement of supporting reasons is required).

We also conclude that the addict exception should be viewed as principally intended for defendants for whom alternative sentencing offers the prospect of drug rehabilitation and, consequently, an end to their commission of drug distribution offenses. *Cf. Marshall v. United States*, 414 U.S. 417, 424–25, 94 S.Ct. 700, 705, 38 L.Ed.2d 618 (1974) (by adopting a two-prior-felony exclusion, Congressional intent was to exclude from NARA treatment those less likely to be rehabilitated by such treatment and assure adequate protection to society against "the addict who is or may be a hardened criminal"). The Controlled Substances Act, unlike NARA, does not authorize a provisional commitment for evaluation to assist the sentencing judge in making such a determination. Thus, the defendant's burden to show eligibility for sentencing under the addict exception is greater under the Controlled Substances Act than under NARA. NARA was enacted by Congress in partial reliance on the District of Columbia Dangerous Drug Control Act, which authorized drug treatment for noncriminal drug users and broadened the definition of addict in order to enable more persons to qualify for treatment programs. *Wheeler, supra*, 276 A.2d at 725.[11] In contrast, the addict exception of the Controlled Substances Act was enacted as part of a sentencing scheme designed to restrict a judge's sentencing discretion for certain violent crimes and drug offenses. Nothing in the Act suggests that the addict exception was intended as a loophole for drug users who are also sellers. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc) (a statute should be construed to effectuate, not to defeat, the purposes for which it was enacted);

gress relied in enacting NARA; *see infra* note 11); *United States v. Hart*, 488 F.2d 970, 971 n. 3 (5th Cir.1974).

9. *Wheeler, supra*, 276 A.2d at 724–25.

10. *United States v. Hunter*, 158 U.S.App.D.C. 256, 257 n. 2, 485 F.2d 1035, 1036 n. 2 (1973); *see also United States v. Ross, supra*, 464 F.2d at 381 (government's stipulation that defendant was an addict at time of his arrest not binding at sentencing); *United States v. Hart, supra*, 488 F.2d at 971 n. 3 (presentence report quoting defendant's statement to probation officer that

he was free from physical symptoms of drug addiction insufficient to preclude judicial determination of addiction where question of habitual use not explored).

11. The Dangerous Drug Act for the District of Columbia was designed to protect the community from "the menace of drug addiction and to afford an opportunity to the drug user for rehabilitation." D.C. Code § 24–601 (1967). It did not apply to persons charged with a criminal offense or under sentence. D.C. Code § 24–603(b). See generally *Wheeler, supra*, 276 A.2d at 725.

*Carey v. Crane Service Co.*, 457 A.2d 1102, 1105 (D.C.1983) (stautory meaning of a term or phrase must be derived from "consideration of [the] entire enactment against the backdrop of its policies and objectives," quoting *Don't Tear it Down v. Pennsylvania Avenue Development Corp.*, 206 U.S. App.D.C. 122, 128, 642 F.2d 527, 533 (1980)).

■ Accordingly, we hold that a defendant seeking to be sentenced under the addict exception of § 33–541(c)(2) has a two-fold burden. First, the defendant must alert the trial judge prior to the imposition of sentence that he seeks to be sentenced under the addict exception. The failure to do so will constitute a waiver, and a defendant cannot be sentenced pursuant to the addict exception unless the trial court acts *sua sponte*. Second, the defendant must proffer prima facie evidence of his eligibility. That evidence must include that he has no disqualifying convictions, he was an "addict" (as defined by D.C. Code § 33–501(24)) at the time of the offense, and his addiction was the primary purpose for the commission of his offense. To enable the trial judge to determine whether the defendant has met his burden, the proffer must include more than conclusory statements. It should contain information about the nature of the defendant's addiction and its relationship to his offense as well as a specific proposal for an alternative sentence which contemplates rehabilitative treatment and indicates that the defendant is likely to successfully complete that treatment.

The trial judge, in turn, must determine at the time of sentencing whether the defendant's proffer, as well as any by the government and the probation office, demonstrates that the defendant was an "addict" at the time of the offense and committed the offense to obtain drugs for his personal use because of his drug addiction. If the judge finds that the defendant is eligible for sentencing under the addict exception, then the judge must decide what would be an appropriate sentence. That decision rests within the sound discretion of the trial judge. Under our analysis of the Controlled Substances Act, an important factor for the judge to consider in sentencing an eligible defendant is the defendant's prospect for drug rehabilitation.

### III

■ Turning to the instant case, we hold that appellant met his burden to demonstrate his eligibility for sentencing under § 33–541(c)(2), the addict exception of the Controlled Substances Act. Defense counsel alerted the trial judge of appellant's request for such sentencing at the time of his guilty plea. Counsel's letter to the judge prior to sentencing and counsel's representations at the time of sentencing proffered prima facie evidence of appellant's eligibility. The record further reveals appellant was prepared at sentencing to refute the factual basis for the presentence report's recommendation of incarceration and its conclusion about appellant's motivation for seeking treatment, through testimony which would have included a description of the rehabilitative drug treatment program in which appellant was enrolled. His counsel also sought an opportunity to meet the prosecutor's challenge to appellant's eligibility.

The presentence report was silent on whether appellant was an "addict" under the Controlled Substances Act or his offense was the result of his addiction. The report's references to appellant's prior probation confirmed defense counsel's representations about appellant's drug use and the direct relationship of his past offenses to his drug use. The report recommended that appellant receive treatment for his drug use, and its notation that he had taken steps to obtain treatment by gaining admission to the R.A.P. program was consistent with appellant's proffer. To the extent the presentence report contradicted appellant's proffer, the report focused on his prior criminal record as indicating his duplicitous attitude about drug treatment and hence, his unlikely prospect for rehabil-

itation, and it relied on contested facts in recommending incarceration. Defense counsel's proffer of Mr. Prentiss as a witness who was familiar with appellant's drug use and habits was directly relevant to the resolution of these contradictions.

The prosecutor's initial challenge to appellant's claim of his eligibility for addict exception sentencing was his failure to allege his addiction. This was factually incorrect, and the prosecutor's misunderstanding was due, in part, to the fact that the prosecutor had not been provided a copy of the letter which defense counsel had sent to the trial judge prior to sentencing. The prosecutor's subsequent challenge was based on the statement in the presentence report that appellant had denied he suffered from "serious addiction." The trial judge did not permit defense counsel to respond. On appeal appellant contends counsel could have argued that, contrary to the prosecutor's contention, the addict exception does not distinguish between serious and nonserious narcotics addicts, and that appellant's admitted drug use was regular and substantial, as witnesses were prepared to testify at the time of sentencing.

■ A trial judge possesses "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed," *Butler v. United States*, 379 A.2d 948, 950 (D.C.1977) (quoting *Williams v. New York*, 337 U.S. 241, 246 & 251, 69 S.Ct. 1079, 1082 & 1085, 93 L.Ed. 1337 (1949)), and may properly rely on reliable information in the presentence report. *Williams v. United States*, 427 A.2d 901, 904 (D.C.1980) (sentencing judge may consider any reliable evidence regardless of whether such evidence was introduced at trial); *Butler, supra*, 379 A.2d at 950; Super.Ct.Crim.R.

32(b). The trial judge must, however, make his determination of a defendant's eligibility under the addict exception on the basis of reliable information and appropriate considerations. *See Williams, supra*, 427 A.2d at 904; *United States v. Weston*, 448 F.2d 626, 634 (9th Cir.1971) (error to rely on unsupported information in a presentence report).

■ Furthermore, since the defendant carries the burden to demonstrate his eligibility for sentencing under the addict exception, D.C. Code § 33–541(c)(2), the defendant must be given a fair opportunity to demonstrate his eligibility and to persuade the judge that his addiction and offense make inappropriate imposition of the mandatory minimum sentence. This opportunity will generally be afforded when a defendant submits a proposal for sentencing under the addict exception.[12] Whether an evidentiary hearing is also required will depend on the circumstances and is left in the first instance to the discretion of the trial judge. Thus, a defendant's opportunity to be heard may be fully satisfied where his proffer or the facts of the offense clearly make a hearing unnecessary.[13] Similarly, a hearing may be unnecessary where the trial judge finds reliable information in the presentence report of a defendant's ineligibility or his unlikely prospects for rehabilitation, notwithstanding any of the defendant's challenges to the report. On the other hand, although a defendant is not generally entitled to have other persons testify for him at sentencing, *United States v. Jackson*, 700 F.2d 181, 191 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983), a hearing may be necessary, for example, where a defendant's prima facie proffer is inconsistent with material portions of a presentence re-

---

12. A copy of any written proposal should be sent to the prosecutor and, when the court has ordered preparation of a presentence report, Super.Ct.Crim.R. 32(b), to the probation office.

13. *See, e.g., Pickney, supra,* 177 U.S.App.D.C. at 427, 543 F.2d at 912 (court denied appellant an

evidentiary hearing because the evidence adduced at trial showed he was selling a large quantity of heroin at a discount and of a purity above that being sold on the street, and thus, "strongly indicated that he was engaged in wholesaling narcotics").

port or the government's representations.[14] Similarly, if the presentence report or other material before the court lacks the information which is necessary for a proper judicial determination, a hearing may be necessary unless the court orders a supplemental presentence report to be prepared.[15]

In the instant case we conclude the record does not support the trial judge's determination that appellant failed to meet his burden to demonstrate his eligibility for sentencing under the addict exception. In addition, because the trial judge did not afford appellant a fair opportunity to meet the challenges to his eligibility, the judge abused his discretion and therefore erred in proceeding to impose the mandatory minimum sentence. *See Johnson, supra,* 398 A.2d at 366. Even were the judge's labeling of appellant as a perpetual liar well-founded, it does not explain the judge's conclusion that appellant had not come close to showing he was eligible for addict exception sentencing. Defense counsel's proffer of appellant's eligibility was unchallenged in substantial part. The prosecutor's reliance on appellant's denial of "serious addiction" in the probation report was misplaced; the statute does not refer to "serious addiction" as a prerequisite to eligibility, and, in any event, the judge must determine at the time of sentencing a defendant's addiction and primary motivation for committing the offense. Furthermore, appellant was denied the opportunity to present witnesses to counter the presentence report's alleged factual misstatements which were relied upon by the trial judge in concluding that

appellant was a prime candidate for the mandatory minimum sentence. His counsel was also denied the opportunity to respond to the prosecutor's interpretation of the statute.

Even if we were satisfied that appellant had been afforded an adequate opportunity to meet his burden, the judge's observations about the nature of the mandatory sentencing statute would require a remand. The defendant's burden of proof cannot be insurmountable or tantamount to repeal of the addict exception. The same citizens who were convinced of the need to limit a judge's sentencing discretion also perceived the possibility that an addicted defendant could present persuasive reasons why he was deserving of a different sentence, and relied on the judiciary to identify such defendants on a case by case basis.

Accordingly, we remand the case to the trial court with instructions to vacate appellant's sentence and to afford him an opportunity to present evidence on his addiction and its relationship to his offense, and on his prospects for rehabilitation through the R.A.P. program. Thereafter the trial court shall determine whether appellant is eligible for addict exception sentencing. If so, the court shall, in its discretion, decide whether imposition of the mandatory minimum sentence is nevertheless appropriate.[16]

*Reversed and remanded.*

---

**14.** By "material" we refer both to the ultimate conclusions in the report about a defendant's addiction, its relationship to his offense and the likelihood of his successful rehabilitation through treatment, as well as the facts and circumstances on which those conclusions are based. *See, e.g., United States v. Stalnaker, supra,* 544 F.2d at 729 (where trial judge determined under NARA that defendant was not an "eligible offender" because evidence showed he sold drugs to support his codefendant's habit, evidentiary hearing was required to allow defendant an opportunity to demonstrate his "primary purpose" in selling drugs was to support a joint need).

**15.** Super.Ct.Crim.R. 32(b)(3).

**16.** Appellant was also denied his right of allocution pursuant to D.C. Code § 23–103 (1981) and Super.Ct.Crim.R. 32(c)(1). The trial court did not address him personally and ask him whether he wished to make a statement. On this ground alone appellant's sentence would have to be vacated and the case remanded to allow appellant to allocute.